## ALLEN *v.* UNITED STATES EX REL. LOWRY.

---

DEPARTMENTAL PRACTICE; STATUTORY CONSTRUCTION; PATENTS; PATENT PRACTICE; APPEALS; INTERLOCUTORY RULINGS; MANDAMUS.

1. While if a departmental practice is contrary to law, it is not made lawful by the practice of a department for a long period of time, yet due regard should be given to a practice which admittedly has prevailed for more than twenty-five years, in proceedings of a judicial

nature, even should there be a reasonable doubt in the mind of the court as to the proper construction to be placed upon a statute.

2. In construing a statute relating to appeals in patent cases, the terms of the statute should receive a reasonable interpretation, and be so construed as to avoid multiplying litigation or producing unnecessary delay and expense to the parties concerned, and to prevent, as far as possible, embarrassment and hindrance to the proceedings in the Patent Office (following *Westinghouse .v. Duncan,* 2 App. D. C. 131) ; and this applies equally to appeals in the Patent Office in interlocutory proceedings in interferences.

3. It would *seem* that it might, in many cases of interference, be quite difficult to decide the question of priority, where the evidence shows that the device disclosed in the application is not operative. Other ancillary questions have been reviewed by this court when they have properly come before it on appeals from final judgments awarding priority of invention. (Following *Stevens* v. *Seher,* 11 App. D. C. 245.)

4. Mandamus will not lie by a party to an interference proceeding, to compel the Commissioners of Patents to direct the Examiners-in-Chief of the Patent Office to reinstate and take jurisdiction of an appeal taken by the relator from a ruling of the primary examiner denying his motion to dissolve an interference which had been declared between his unexpired patent and a pending application.

5. A motion to dissolve an interference in the Patent Office before the final hearing of the question of priority, and before the case is ready for such hearing, is an interlocutory proceeding, and is not appealable to this court unless made so by statute or rule of court; and neither secs. 482, 4904, or 4909, U. S. Rev. Stat.(U. S. Comp. Stat. 1901, pp. 272, 3389, 3390) nor any rule of the Patent Office, gives the right of appeal to the Examiners-in-Chief from decisions made by the principal examiner on the hearing of a motion to dissolve, holding that the party has the right to make the claim which is the issue of the interferences.

6. Where the statute gives the right of appeal in interferences from decisions of any officer of original jurisdiction, it means final decisions, and the right to such an appeal should be clear; and, if there be any doubt as to the construction of any statute claimed to confer the right, such doubt must be resolved in favor of a long-established practice of the Patent Office to the contrary.

7. A party to an interference is not deprived of any statutory right to an appeal by reason of the rules of the Patent Office not providing for an appeal from the decision of an examiner that a party has a right to make the interfering claim.

8. Whatever right a party to an interference has to contest the right of his adversary to make the interfering claim, such right, if denied, is re-

viewable, if at all, upon the final decision of the question of priority, and such right of appeal as he has to have that question decided is to be construed on the hearing of the statutory appeals allowed from the decisions of the question of priority by the Examiner of Interferences.

No. 1521.   Submitted April 5, 1905.   Decided May 24, 1905.

HEARING on an appeal by the respondent from an order of the Supreme Court of the District of Columbia directing the issue of a writ of mandamus to the Commissioner of Patents.   *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. John M. Coit* for the appellant, the Commissioner of Patents.

*Mr. Oliver Mitchell, Mr. Edmund Wetmore,* and *Mr. A. V. Cushman* for the appellees.

Mr. Justice DUELL delivered the opinion of the Court:

This appeal is taken from a judgment of the supreme court of the District of Columbia, granting the petition of the relators, George A. Lowry and the Planters' Compress Company, that a mandamus issue commanding the Commissioner of Patents to direct the Examiners-in-Chief of the Patent Office to reinstate and take jurisdiction of an appeal taken by Lowry from the ruling of the primary examiner denying his motion to dissolve on interference declared by the Patent Office between his unexpired patent and a pending application for patent filed by one William L. Spoon.

The interference was declared under section 4904 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 3389).

The record discloses that the interference was declared and notice thereof duly given to the parties as required by law.

In accordance with Patent Office rule 122, which is one of the rules promulgated by the Commissioner of Patents under the authority conferred upon him by section 483 of the Revised Stat-

utes (U. S. Comp. Stat. 1901, p. 272), Lowry moved to dissolve the interference upon the various grounds specified in the rule, and that motion was transmitted by the Examiner of Interferences to the proper principal examiner for a hearing. The reason urged at the hearing by Lowry for the dissolution was that Spoon had no right to make the claims in controversy because his application was for an inoperative device.

The petition sets forth, and the answer admits, that various proceedings were had in the interference after Lowry's motion to dissolve was transmitted to the principal examiner and before his final refusal to dissolve the interference, which denial led to Lowry's appeal to the Examiners-in-Chief, which was by them dismissed, and which is required to be reinstated and heard by the mandamus granted by the court below.

It is unnecessary to refer to these various proceedings, for no allegation is made that any of them were irregular, or that they were contrary to the statutes and rules governing the conduct of interference proceedings, and, therefore, they have no legitimate bearing upon the question raised by the petition for the mandamus.

The facts which raise the question as to the relator's right to the mandamus may be briefly summarized. Lowry having been made a party to an interference, as provided by section 4904, made a motion for its dissolution in accordance with Patent Office rule 122, which motion being denied by the principal examiner, who ruled that Spoon had the right to make the claims, Lowry filed an appeal to the Examiners-in-Chief, although Patent Office rule 124 expressly provided that no appeal could be taken from a ruling by the examiner that a party to an interference had the right to make the interfering claims. Upon motion duly made Lowry's appeal was dismissed by the Examiners-in-Chief, and, the Commissioner of Patents having denied Lowry's petition for an order directing the Examiners-in-Chief to reinstate and determine the appeal, he applied to the supreme court of the District of Columbia for a writ of mandamus, which was granted.

The question which it becomes necessary for us to decide is

12     ALLEN *v.* UNITED STATES ex rel. LOWRY.

Opinion of the Court.     [26 App.

simply whether the court below erred in issuing the mandamus commanding the Commissioner to direct the Examiners-in-Chief to reinstate and determine the appeal. It is contended on behalf of the relators that the rule is contrary to law because it deprives a party to an interference of the right to an appeal given him by the statute. If this contention be correct, then the court below rightly granted the mandamus. If not, its grant was an error and must be reversed. The paragraph of rule 124 in question provides that from a decision of the primary examiner affirming the patentability of the claim or the applicant's right to make the same, no appeal can be taken. No question has or can be raised that the Commissioner of Patents has the right to regulate the conduct of proceedings in the Patent Office, including thereunder interference proceedings, by lawful rules, provided they are approved by the Secretary of the Interior, as the rule in question has been. U. S. Rev. Stat. § 483 (U. S. Comp. Stat. 1901, p. 272).

It was incumbent upon Lowry, in order to entitle him to a writ of mandamus, to show that he had a clear right of appeal under the statutes relating to appeals in interference cases. *Ex parte Cutting,* 94 U. S. 14, 24 L. ed. 49.

The sections of the statute and the rules of the Patent Office, which are to be considered in disposing of this appeal, are sections 482, 483, 4904, and 4909, and rules 122 and 124. These read as follows:

"Sec. 482. The Examiners-in-Chief shall be persons of competent legal knowledge and scientific ability, whose duty it shall be, on the written petition of the appellant, to revise and determine upon the validity of the adverse decisions of examiners upon applications for patents, and for reissues of patents, and in interference cases; and, when required by the Commissioner, they shall hear and report upon claims for extensions, and perform such other like duties as he may assign them.

"Sec. 483. The Commissioner of Patents, subject to the approval of the Secretary of the Interior, may from time to time establish regulations, not inconsistent with law, for the conduct of proceedings in the Patent Office."

ALLEN *v.* UNITED STATES ex rel. LOWRY.          13

D. C.]                    Opinion of the Court.

"Sec. 4904.  Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be, and shall direct the primary examiner to proceed to determine the question of priority of invention.  And the Commissioner may issue a patent to the party who is adjudged to be the prior inventor, unless the adverse party appeals from the decision of the primary examiner, or of the board of Examiners-in-Chief, as the case may be, within such time, not less than twenty days, as the Commissioner shall prescribe."

"Sec. 4909.  Every applicant for a patent, or for the reissue of a patent, any of the claims of which have been twice rejected, and every party to an interference, may appeal from the decision of the primary examiner, or of the examiner in charge of interferences in such case, to the board of Examiners-in-Chief, having once paid the fee for such appeal."

"122.  Motions to dissolve an interference upon the ground that no interference in fact exists, or that there has been such irregularity in declaring the same as will preclude a proper determination of the question of priority, or which deny the patentability of an applicant's claim, or his right to make the claim, should, if possible, be made not later than the twentieth day after the statements of the parties have been received and approved.  Such motions, and all motions of a similar character, should be accompanied by a motion to transmit the same to the primary examiner, and such motion to transmit should be noticed for hearing upon a day certain before the Examiner of Interferences. When in proper form, the motion presented will be transmitted by the Examiner of Interferences, with the files and papers, to the proper primary examiner for his determination, who will thereupon fix a day certain when the said motion will be heard before him upon the merits, and give notice thereof to all the parties.  If a stay of proceedings be desired, a motion therefor should accompany the motion for transmission."

"124.  Appeal may be taken directly to the Commissioner

14      ALLEN *v.* UNITED STATES ex rel. LOWRY.

Opinion of the Court.                    [26 App.

from decisions . . . on all motions except the following: (1) On motions to dissolve which deny the patentability of applicant's claim; (2) on motions to dissolve which deny the right to an applicant to make the claim; (3) on motions involving the merits of the invention. Decisions on these motions, when appealable, go to the Examiners-in-Chief, in the first instance, and upon such appeals the questions shall be heard *inter partes.*

"From a decision of the primary examiner affirming the patentability of the claim, or the applicant's right to make the same, no appeal can be taken."

It will be helpful, in determining the question, to consider the history of the legislation relating to interferences and the rules promulgated from time to time by the Commissioner of Patents. Congress, as early as 1793, recognizing the likelihood of two or more different parties claiming a prior inventorship of the same invention, and the necessity of providing for a determination of such question, made provision therefor, which in some form or other has continued to this day. The patent act of 1793 provided that, in case of interfering applications, the same should be submitted to three arbitrators, the decision of a majority of whom should be final as far as related to the grant of a patent. This provision remained in force until the patent act of 1836. This act created the Patent Office and inaugurated the present examination system, based on novelty as well as usefulness. Under the prior acts it may be stated that patents were granted without examination as to novelty, the only questions being considered were usefulness, importance, and the form of the papers. Section 8 of the act of 1836 provided for the determination of questions of priority of invention between interfering applications and between such applications and unexpired patents. Here first appears the provision for bringing unexpired patents into interference proceedings. Of course the patent could not be recalled or revoked should the interference result in an award of priority to the applicant. The patentee could then, as now, bid defiance to the Patent Office. All that could be done was to issue a patent to the applicant,

ALLEN *v.* UNITED STATES ex rel. LOWRY.    **15**

D. C.]                    Opinion of the Court.

in which event there would be two outstanding patents for the same invention. Section 16 of the act provided a remedy for this, and also further relief for the applicant should his application for a patent be denied by the decision of the board of examiners. Such relief was by bill in equity, which could be filed by either party, whereupon the court could consider the whole matter *de novo,* and declare either or both patents void in whole or in part, or, where one party was an applicant, could award a patent to him. In other words, interference proceedings in the Patent Office were not final under the act of 1836, nor have they since been, for similar provisions are found in the later statutes on the subject, and are now set forth in sections 4915 and 4918 of the Revised Statutes (U. S. Comp. Stat. 1901, pp. 3392, 3394). Under the act of 1836 the Commissioner was directed to give notice to the parties, and, if either was dissatisfied with his decision on the question of priority, made after hearing, an appeal could be taken to a board of three disinterested persons appointed by the Secretary of State, and the decision of a majority was binding upon the Commissioner of Patents. By the patent act of 1839 this board was abolished and its powers were vested in the chief justice of the district court of the United States for the District of Columbia. The act of 1852 extended a like authority to the assistant judges of the circuit court of said District. The next change in procedure occurred when the patent act of March 2, 1861, went into effect. Section 2 of this act provided for the appointment of three Examiners-in-Chief, whose duty as to appeals in interference proceedings will later be set forth. From their decisions appeals were provided to the Commissioner of Patents. At this time there was no such officer as an Examiner of Interferences, and the control of interferences was in the hands of the various primary examiners. Their decisions in both *ex parte* and interference cases were appealable successively to the Examiners-in-Chief, the Commissioner of Patents, and to any one of the justices of the circuit court. The next change occurred when the act known as the "consolidated patent act," approved July, 1870, went into effect. This act provided for the appointment of a special

Examiner of Interferences to decide the question of priority in
the first instance, and whose decisions were appealable succes-
sively to the Examiners-in-Chief and to the Commissioner, whose
decision was final and so remained until the court of appeals
of the District of Columbia was established in 1893.    Section
42 of the act of 1870 contains the provision for interferences.
The act of 1870 was repealed by the Revised Statutes of 1874,
but section 42 of the earlier act was continued in the same terms
as section 4904 of the Revised Statutes, which provides for the
decision of the question of priority.

From the foregoing, it is apparent that interferences were
instituted for the purpose of deciding the question of priority
of invention, and for no other purpose, and it logically follows
that the reviews or appeals provided were to be from the deci-
sions awarding priority by the officer who was authorized to de-
cide the question of priority in the first instance.    For example,
the act of 1836, in providing for appeals, expressly says that the
appeal is one from the decision on the question of priority.    The
act of 1861 providing for the appointment of Examiners-in-
Chief does not in words specify what the appeals in interfer-
ence cases are to embrace, but manifestly they could only relate
to the question of priority, as that was the only question for the
determination of which the interference was instituted.    When
they came to pass upon the question of priority, they doubtless
might pass upon such matters as were essential to the correct
determination of that question.    Neither the statute creating
the board of Examiners-in-Chief, nor any other, provides for
motions to dissolve an interference for any reason after it was
once declared, and, not providing for such motions, they do not
provide for any appeals therefrom.    In fact, motions to dissolve
are not the creature of any statute, but of the rules of the Patent
Office, and no provision, by Patent Office rules, for such motions,
was made until many years after the statutes relating to in-
terferences were enacted.    Section 42 of the act of 1870, re-
enacted in 1874 and now in force and known as section 4904 of
the Revised Statutes, in line with the earlier statutes, provides
for the institution of interferences for the sole purpose of

ALLEN *v.* UNITED STATES ex rel. LOWRY.        17

D. C.]                    Opinion of the Court.

determining the question of priority of invention, and the fair intendment of section 4909, which provides for appeals in interference cases, is that such appeals only go to the question of priority of invention, for the determination of which they are instituted.

We cannot emphasize too strongly that, in our opinion, the statutes relating to interferences only provide that they shall be instituted for the sole purpose of determining priority of invention, and that it logically follows that appeals in such proceedings, so far as the statutes go, only provide for appeals from the decisions of priority. The Commissioner of Patents, under the authority given to regulate the proceedings in the Patent Office, is clothed with power to regulate all interlocutory proceedings in interference cases by rules not inconsistent with law. If he deems it wise to provide, after the interference has once been declared, for remanding the interference to the primary examiner for the purpose of an interlocutory hearing and determination of a motion to dissolve it for any reason which he considers may be in the interest of the public or the parties, we take it that he has full power to do so, and that he may also provide that such motions may or may not in some or all respects be reviewed by the appellate tribunals of the Patent Office, and, in so doing, he is not thereby depriving any party of any statutory right to have all questions passed upon at final hearing, and on appeals therefrom, which are necessary for a correct determination of the question of priority, which is the sole question for which interferences are declared. If we find that, at the time of the enactment of section 4909, there was no provision, either in the statutes, or the rules of the Patent Office, for any such proceeding as a motion to dissolve, we fail to see how it can be assumed that Congress meant to provide for an appeal from the denial of a motion of so plainly an interlocutory character. It would be putting a forced construction upon the statute to so hold. If it be assumed that there is a legal right in a party to an interference, after it is once declared, to make an interlocutory motion for its dissolution before the final hearing on the question of priority, irrespec-

18     ALLEN *v.* UNITED STATES ex rel. LOWRY.

Opinion of the Court.                    [26 App.

tive of any statute or rule, we fail to comprehend upon what principle it can be successfully contended that the right of an appeal to a higher tribunal lies, in the absence of express grant of such an appeal. It is an interlocutory matter, and at best brings up only partially and indirectly the question of priority; and, if successive appeals be permitted, the result would be only to add another terror to the many surrounding an interference proceeding in the Patent Office. From the simple and summary mode first adopted for determining the question of priority of invention, that proceeding, by system of Patent Office rules, has grown to be a veritable old man of the sea, and the unfortunate inventor who becomes involved therein is a second Sinbad the Sailor. It is known to all who are familiar with the practice in interference proceedings that, by motions, petitions, and appeals of every conceivable character that the ingenuity of the skilled attorney can devise, interferences can be, and are, prolonged for years, to the injury of the public, and often to the financial ruin of the parties. It does not appear when the present interference was declared, but, in view of all the proceedings had, as disclosed by the record, it has been a long time, and no testimony has yet been taken. Should we affirm the decision of the court below, the reasons for which are not set forth, and reverse the practice of the Patent Office as it has stood unchanged for at least twenty-five years, we should be placing still another burden of successive piecemeal appeals upon the unfortunate interferant in a proceeding which, when decided, is not final, for, as we have shown, when the defeated party is an applicant, he can, if defeated in the Patent Office, proceed by bill in equity, under section 4915 of the Revised Statutes, to obtain a patent, and, if one be finally awarded him, he can again try the question of priority with his former successful antagonist under section 4918 of the Revised Statutes. In the present case, as we have shown, should a patent be awarded to Spoon, the question of priority could be at once retried by Lowry, or by Spoon, under the latter section. We refer to this feature of the case with full knowledge that the motives of a party in asserting a legal right cannot deprive him of it,

and without in the remotest manner intending to question the good faith of Lowry, but because the question is so important to the rights of the public and of inventors, which are best subserved by a speedy grant of lawful patents to rightful parties, and with the least possible expense.  We should not, however, in the light of what is really accomplished through an interference, go out of our way, or unduly search for some plausible ground on which to predicate a finding that Lowry has a clear right of appeal from an examiner's decision in an interlocutory proceeding.  Such rulings, as we have said, are not appealable prior to final judgment or decree, unless it be so provided by statute.  2 Enc. Pl. & Pr. p. 81.

We have stated in general terms that we find nothing in the statutes permitting an appeal in such interlocutory motions, but, before referring more particularly to the statutes in question, it will be well to examine the history of interlocutory motions to dissolve interferences, provision for which has, from time to time, been made by the rules of the Patent Office.  The first provision in the rules relating to their dissolution because improperly declared is found in rule 58 of August 1, 1869, eight years after the creation of the board of Examiners-in-Chief.  This rule says:

"58. Cases of interference will, when the issue is made up and the testimony taken, be tried before an examiner specially detailed for that purpose.  If an interference has been properly declared, it will not be dissolved without judgment of priority, founded upon the testimony or the written concession of one of the parties."

It will be seen that this does not, except by inference, provide for a dissolution of an interference, and no ground is stated upon which a motion may be based, save the general one that it has been improperly declared, and no provision of any kind is made for an appeal from any order made after the decision of the motion.

The act of 1870 having provided for an examiner of interferences, provision was made in rule 59, of July 15, 1870,

far their trial before such officer. Its full provisions are as
follows:

"59. Cases of interference will, when the issue is made up
and the testimony taken, be tried before the examiner in charge
of interferences. If an interference has been properly declared
it will not be dissolved without judgment of priority, founded
upon the testimony or the written concession of one of the
parties, unless the invention is found not to be patentable, or to
have been abandoned, or that it has been in public use for more
than two years prior to the application of either party, or that no
interference in fact exists."

The last paragraph of this rule, as amended in 1871, contains
the first express provision for an interlocutory motion for dis-
solution of an interference. It says: "A motion for a dissolu-
tion of an interference on the ground that it was improperly de-
clared, if made before the taking of testimony, will be heard by
the primary examiner who declared the interference."

On September 1, 1873, the following clause was added to the
rule: "Upon such hearing the primary examiner will recom-
mend the granting or refusal of such motion, and the examiner
in charge of interferences will order accordingly."

The rule was changed April 1, 1875, so as to read as fol-
lows:

"59. An interference will not be declared until the sub-
ject-matter involved is decided to be patentable. If, after being
declared, it is found that no interference in fact exists, or
that there has been such irregularity in declaring the same
as will preclude the proper determination of the question of
right between the parties, it will be dissolved, and an appeal
may be taken to the Commissioner in person."

It will be seen that here first is made any provision for
an appeal from the decision of the interlocutory proceeding,
and such appeal was allowed to the Commissioner in person.

November 1, 1876, the phraseology of this rule was changed
in matters not material to the question under consideration, and
the following clause added to it: "But, if the examiner should
decide that the subject-matter is not patentable in view of the

state of the art, the interference will be dissolved, and the matter decided upon can be proceeded with *ex parte.*" Without material modification, this rule remained in force until the general revision of rules of December 1, 1879, when the following rules relating to dissolution were adopted:

"116. Motions to dissolve an interference, which deny the patentability of an applicant's claim, or his right to make the claim, will be submitted to the Examiner of Interferences before the day fixed for filing the statements provided for in rules 97, 101, and 102, and will be transmitted by him, with the files and papers, to the primary examiner, who will take jurisdiction of the case for the determination of such motions, and will return the files and papers to the Examiner of Interferences, with his decision, at the expiration of the time limited for appeal, if no appeal shall have been taken, or sooner if the party entitled to appeal shall file a waiver in writing of his right of appeal; and such decision will be binding on the Examiner of Interferences unless revised or modified on appeal. From a decision of the primary examiner on such motion, denying the patentability of a claim or the right of an applicant to make it, an appeal may be taken *ex parte* to the Examiners-in-Chief; but from his decision affirming its patentability or the applicant's right no appeal can be taken.

"117. Motions to dissolve an interference upon the ground that no interference in fact exists, or that there has been such irregularity in declaring the same as will preclude the proper determination of the question of priority between the parties, and all other lawful motions except those mentioned in rule 116, will be made before the tribunal having jurisdiction at the time.

      \*     \*     \*     \*     \*     \*     \*

"118. Appeal may be taken directly to the Commissioner from decisions on all motions, except motions to dissolve interferences denying the patentability of applicants' claims or their right to make the claims, and other lawful motions involving the merits of the case, which, when appealable, may be appealed to the board of Examiners-in-Chief (see rules 116, 141)."

Here first appears provision for an interlocutory motion to

22      ALLEN *v.* UNITED STATES ex rel. LOWRY.

Opinion of the Court.                    [26 App.

dissolve an interference upon the ground that a party to it has not the right to make the interfering claim, which was the ground urged by Lowry upon the hearing of his motion. The provisions for appeals are found in rules 116 and 118, which provide an appeal to the Examiners-in-Chief from (among other decisions) one denying the right of an applicant to make the interfering claim. No provision is made for an appeal from a decision affirming his right to make the interfering claim. September 15, 1880, the following clause was added to rule 118, and it has been ever since in force. It reads, "from a decision affirming the patentability of the claim, or the applicant's right to make the same, no appeal can be taken." This clause simply makes clear and positive the then well-settled rule of the office that no appeal was permitted in any proceeding where the examiner held that a claim was patentable to the party making it. The Commissioner, however, was, of course, not debarred from exercising his supervisory power, and, for lawful reasons, reversing the holding of the examiner and refusing to allow the claim. From that time on changes have been made in the rules relating to the conduct of interferences until the rules have the phraseology shown in present rules 122 and 124. It will be seen that at no time has an appeal been provided from a decision rendered on hearing an interlocutory motion for a dissolution of an interference affirming the right of a party to make the interfering claim.

It is urged on behalf of appellees that rule 55 of July 15, 1870, and rule 55 of 1871 (the latter when read in the light of rule 48 of the same date), provided for appeals to the Examiners-in-Chief from decisions on interlocutory motions for the dissolution of interferences. These rules are as follows:

"55. In cases of interference, parties have the same remedy by appeal as other applicants,—to the Examiners-in-Chief and to the Commissioner; but no appeal lies in such cases from the decision of the Commissioner. Appeals in interference cases should be accompanied by a brief statement of the reasons thereof."

"55. In cases of interference appeals may be taken to

ALLEN v. UNITED STATES ex rel. LOWRY.        23

D. C.]                    Opinion of the Court.

the Examiners-in-Chief and to the Commissioner in the manner provided in rule 48."

"48. In cases of interference parties have the same remedy by appeal to the Examiners-in-Chief and to the Commissioner as in *ex parte* cases; but no appeal lies in such cases from the decision of the Commissioner."

We do not so read them, because at the time of their promulgation there were in force no rules providing for such motions, and, secondly, because the statute of 1870, relating to appeals, provides that the appeals in interference were only from final decisions awarding priority.

Nor, as we have said, can authority for appeals in such matters to the Examiners-in-Chief be predicated upon the clause of rule 59 of 1875. The 1877 rule 59 is, in respect to appeals, very similar to that of 1875, but counsel for appellees seem to have overlooked that rule and considered rule 59 of 1877 as a new rule. They have not quite correctly quoted rule 59 of 1877. But both rules give the right of appeal, not to the Examiners-in-Chief, but to the Commissioner; and it will be remembered that at this date no provision was made in the rules for interlocutory motions to dissolve interferences on the ground that a party to it had not the right to make the interfering claim.

While we recognize the rule, as laid down in *Houghton* v. *Payne,* 194 U. S. 88, 48 L. ed. 888, 24 Sup. Ct. Rep. 590, and in other decisions of the supreme court, that, if a practice is contrary to law, it is not made lawful by the practice of a department for a long period of time, yet due regard should be given to a practice which admittedly has prevailed for more than twenty-five years in proceedings of a judicial character, even should there be a reasonable doubt in the mind of the court as to the proper construction to be placed upon a statute. The Supreme Court said, in *Bate Refrigerating Co.* v. *Sulzberger,* 157 U. S. 1, 39 L. ed. 601, 15 Sup. Ct. Rep. 508:

"If the statute be not so explicit as to preclude construction; if, upon applying to it the established rules of interpretation; if, looking at it in the light of previous legislation on the subject,

if there be reasonable ground for adopting one of two con-
structions,—this court, without departing from sound principle,
may well adopt that construction which is in harmony with the
settled practice of the executive branch of the government."

With such light as is afforded from a consideration of prior
statutes and the rules made by the Commissioner of Patents
under statutory authority, we will more fully consider section
4909, which is the same as section 46 of the act of July 8, 1870.
Provision was first made for a board of Examiners-in-Chief
by section 2 of the act of March 2, 1861. That section provided
that the duty of the board was, "on the written petition of the
applicant for that purpose being filed, to revise and determine
upon the validity of decisions made by examiners when adverse
to the grant of letters patent, and also to revise and determine,
in like manner, upon the validity of the decisions of examiners
in interference cases" [12 Stat. at L. 246, chap. 88], etc. Mani-
festly, the appellate power to revise the decision of examiners
in interference cases referred to such decisions as examiners
then had the power to make in such proceedings, and we are not
referred to any statute or Patent Office rule, nor have we been
able to discover any such statute or rule, which gave to the ex-
aminers any question for them to decide but that of priority.
There was at that time no statutory authority lodged in examin-
ers to decide interference cases, but, as the business of the Patent
Office increased, it became necessary for the Commissioner of
Patents to delegate more and more of his duties to his assistants;
but no statutory authority is shown to have been given to the
Commissioner at this time to decide more than the question of
priority of invention. Undoubtedly it was within his power and
his duty, in deciding that question, to examine and decide all
ancillary matters necessary to the correct determination of the
main question; and, when he delegated his authority in inter-
ference cases, so far as he could, to his assistants, it is fair to
presume that such ancillary questions, if necessary to the deci-
sion of the question of priority, could be examined and decided
by them. But it by no means follows that such ancillary ques-
tions were to be decided by him, or them, in advance of the de-

ALLEN *v.* UNITED STATES ex rel. LOWRY.          25

D. C.]                          Opinion of the Court.

cision of the main question,—that of priority.   Therefore we conclude that when an appeal was given to the Examiners-in-Chief to review the decisions of Examiners in Interference cases, Congress had not in mind to confer power of review upon them except as to the question of priority, and such ancillary questions as the examiners had passed upon when deciding the question of priority for which the interference was instituted. When section 46 of the act of 1870 was written, there had been created an Examiner of Interferences, who took the place of the examiners in deciding the only question for which an interference is instituted.   Therefore we find provision made for appeals from his decisions; and this was carried forward in section 4909 of the revision.   For convenience, we again set forth this section:

"Sec. 4909.   Every applicant for a patent, or for the reissue of a patent, any of the claims of which have been twice rejected, and every party to an interference, may appeal from the decision of the primary examiner, or of the examiner in charge of interferences in such case, to the board of Examiners-in-Chief, having once paid the fee for such appeal."

In the light of the previous statutes, we think that the proper construction to be placed on this section is as though it read, every applicant for a patent, or for the reissue of a patent, any of the claims of which have been twice rejected, may appeal from the decision of the primary examiner, and every party to an interference may appeal from the decision of the examiner in charge of interferences in such case, to the board of Examiners-in-Chief.   In other words, to abbreviate and make the section more succinct, the words "may appeal from the decision" were used but once, but we think that thereby clearness was sacrificed for brevity.   We are also of the opinion that the decisions relating to interferences, referred to in sections 482, 4904, and 4909 of the Revised Statutes, from which appeals are allowed to the Examiners-in-Chief and from them to the Commissioner of Patents, are final decisions, and not such as are made in interlocutory matters which do not of themselves preclude and

26      ALLEN v. UNITED STATES ex rel. LOWRY.

Opinion of the Court.            ·      [26 App.

prevent a decision of the question of priority, which is, as we have said, the purpose for which interferences are instituted.

The act of 1893, which created this court, provides that "any party aggrieved by a decision of the Commissioner of Patents in any interference case may appeal therefrom to said court of appeals." [27 Stat. at L. 436, chap. 74, § 9, U. S. Comp. Stat. 1901, p. 3391.] We have construed that clause to refer only to final decisions by the Commissioner in interference cases, and have refused to take jurisdiction and decide interlocutory questions sought to be brought before us on appeal in advance of an appeal taken in such cases to review a final decision awarding priority of invention. As we said in *Westinghouse* v. *Duncan,* 2 App. D. C. 131, in referring to appeals allowed by the statute, "the terms of the statute should receive a reasonable interpretation, and be so construed as to avoid multiplying litigation or producing unnecessary delay and expense to the parties concerned, and to prevent, so far as possible, embarrassment and hindrance to the proceedings in the Patent Office." We think this reasoning applies equally to appeals in the Patent Office in interlocutory proceedings in interferences. There should be some limit on appeals, for where three millions of dollars have been invested, as stated in this case, by the party holding the patent, there is every incentive to prolong the proceedings until the expiration of the patent, and, if then the applicant is successful, it means a second patent for seventeen years, and the public, instead of paying tribute for seventeen years, will have had a patent monopoly existing for twice that period, or for a goodly portion of it.

The power to decide the question of priority, which is the sole question for which interferences were provided, as shown by a reading of every statute on the subject enacted from 1793 down to the present time, having been transferred from the examiners generally to the particular examiner designated as the Examiner of Interferences, it became necessary to transfer this right of appeal in interferences from the decisions of such examiners to the Examiner of Interferences. It was not, as an examination of the rules of the Patent Office has shown, until

ALLEN *v.* UNITED STATES ex rel. LOWRY.                    27

D. C.]                          Opinion of the Court.

1871 that any provision was made for the dissolution of an interference before testimony had been taken and before a decision on the question of priority was in order.   Whether, in the light of experience, it has proved to have been in the interest of interferants and of the public to provide the elaborate system of preliminary or interlocutory motions to dissolve interferences, which has been the outgrowth of the power lodged in the Commissioner under section 483, is perhaps a debatable question. However that may be, we think it clearly within his power, in making provision for these interlocutory motions, to limit the right of appeal where, as in the present case, the examiner has held that the applicant had the right to make the claims of the interference.   Whatever right the relators may have to the judgment of the appellate tribunals of the Patent Office and of this court upon the question of an absence of right in Spoon to make the interfering claims because his device is inoperative, we think that right is not through an appeal from the refusal of the examiner to dissolve an interference upon the hearing of an interlocutory motion made for that purpose, where no right of appeal is granted by the rule under which the motion is made. We take it that the Commissioner could abrogate both rules 122 and 124 without depriving parties to an interference of any statutory right.   If he has the right to make rules for interlocutory motions, he certainly has the right to repeal them.

The right of a party to make the claim of an interference is not finally determined by the decision of the examiner on a motion for a dissolution.   This is clearly shown by rule 126 of the Patent Office under which the Examiner of Interferences or the Examiners-in-Chief before or on deciding the question of priority are authorized to call the attention of the Commissioner to the fact that no interference exists, or that there is a statutory bar to the grant of a patent, etc.; whereupon the interference may be remanded to the primary examiner for examination and decision.   Appeals are allowed from his decision as in other cases.   It is not necessary in this proceeding to construe this rule, or to pass upon the question whether the lack of a right of the party to an interference to make a claim

28        ALLEN *v.* UNITED STATES ex rel. LOWRY.

Opinion of the Court.                    [26 App.

by reason of the inoperativeness of the invention disclosed in his application, does or does not relate to the question of priority as referred to in said rule. However this may be, it would seem that it might in many cases be quite difficult to decide the question of priority where the evidence showed that the device disclosed in the application was not operative. It will be time, however, to decide that question, when it is presented in a case where we are called upon to decide the question of priority. We have, however, reviewed other ancillary questions when they have properly come before us on appeals from final judgments awarding priority of invention. *Stevens* v. *Seher,* 11 App. D. C. 245. We have declined to entertain appeals from decisions of the Patent Office that were not final decisions.

We are clearly of the opinion that the court below erred in granting the petition for the writ of mandamus. Our reasons, summarized, are these: That a motion to dissolve an interference before the final hearing of the question of priority, and before the case is ready for such hearing, is an interlocutory proceeding, and is not appealable unless made so by statute or rule of court; that no statute, and, more specifically stated, neither sections 482, 4904, or 4909 of the Revised Statutes, nor any rule of the Patent Office made by the Commissioner, gives the right of appeal to the Examiners-in-Chief from decisions made by the principal examiners on the hearing of a motion to dissolve, holding that a party has the right to make the claim which is the issue of an interference; that, where the statute gives the right of appeal in interferences from decisions of any officer of original jurisdiction, it means final decisions; that the right to such an appeal should be clear, and that if there is any doubt, although we believe there be none, as to the construction of the statutes claimed to confer the right, such doubt should be resolved in favor of the long established and acquiesced-in practice of the Patent Office, which we believe is in the interest of interferants; that the provision for interlocutory motions to dissolve interferences is the creature of a rule, and not founded on statutory enactment, and that a party to an interference is not deprived of any statutory right to an appeal by reason of the rules not providing

for an appeal from a decision of the examiner that a party has a right to make the interfering claim; that, whatever right a party to an interference has to contest the right of his adversary to make the interfering claim, such right, if denied, is reviewable, if at all, upon the final decision of the question of priority, and such right of appeal as he has to have that question decided is to be considered on the hearing of the statutory appeals allowed from the decision of the question of priority by the Examiner of Interferences.

The relators, not having shown that they have a clear right of appeal which has been denied, are not entitled to the writ of mandamus, and therefore the court below erred in granting the order of January 14, 1905, awarding a writ of mandamus directing the Commissioner of Patents to direct the Examiners-in-Chief to reinstate and take jurisdiction of Lowry's appeal and to entertain and consider the merits thereof, and to decide the same upon the merits. It follows that the order granting the writ of mandamus should be reversed, with costs, with directions to discharge the rule to show cause and to dismiss the petition. It is so ordered.                                            *Reversed.*

A writ of error to the Supreme Court of the United States was allowed June 6, 1905.